## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-23-216-D |
| | ) | |
| DEBORAH WILCZEK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion in Limine to Exclude Evidence of Ms. Wilczek's Conduct While on Pretrial Supervision [Doc. No. 48]. The Government has responded [Doc. No. 56]. The matter is fully briefed and at issue.

### *Background*

Defendant stands charged in a 17-count Superseding Indictment with: (1) two counts of wire fraud in violation of 18 U.S.C. § 1343; (2) six counts of bank fraud in violation of 18 U.S.C. § 1344(2); two counts of uttering forged securities in violation of 18 U.S.C. § 513(a); two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); and five counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). Superseding Indictment [Doc. No. 37]. The Superseding Indictment alleges that Defendant engaged in fraudulent schemes to steal money from the YWCA Enid and the Cimarron Montessori School. *Id.*

On October 11, 2023, the Government filed its Notice Pursuant to Federal Rule of Evidence 404(b) and Intrinsic Evidence [Doc. No. 36]. To prove the charges against

Defendant, the Government stated its intent to offer "evidence pertaining to [Defendant's] conduct while on pretrial supervision." *Id.* at 2. Specifically, the Government intends to offer the following two categories of evidence:

1. On June 7, 2023, Wilczek sent an email to two of her apparent supervisors at ACOG[1] containing numerous false statements. Wilczek first represented that "an old case ha[d] been brought to light." Wilczek then stated that the FBI investigated her finances in 2021 regarding the YWCA Enid and that she "fully cooperated" with the investigation. She stated, "Every deposit I received from the organization was pulled, examined and verified. All deposits were tied back to payroll, daycare reimbursements and travel reimbursements." Wilczek additionally stated that the FBI investigated her finances related to the Cimarron Montessori School and that "FBI agents were once again satisfied with [her] answers." She stated, "This week . . . the judge dismissed any case against my husband and I." Wilczek implied that there would be a media report about her being indicted but intimated that there would be a retraction of this report.

2. The U.S. Probation Office sought to confirm whether Wilczek continued to work at ACOG and whether Wilczek notified ACOG of the pending charges, resulting in Wilczek making additional false statements. On June 9, 2023, Wilczek sent an email to Probation Officer Mark De Mercurio. In the email, Wilczek told Officer DeMercurio that she made the decision to resign from her job at ACOG and attached "an email chain" purportedly notifying her employer about unfavorable press. The attachment to the email contained a doctored version of exhibit 1. On or about August 10, 2023, Probation Officer Lori Olmstead called ACOG and asked to speak to Deborah Wilczek to confirm whether Wilczek continued to work there. Officer Olmstead reached Wilczek at her desk at ACOG. Wilczek told Officer Olmstead that she was not [an] employee of ACOG but rather a contractor. Officer Olmstead determined that this was false and that Wilczek was employed as an accountant at ACOG.

*Id.* at 2-3 (internal citations omitted).

---

[1] ACOG is an initialism for the Association of Central Oklahoma Governments.

Defendant has filed a Motion in Limine to preclude the Government from introducing her conduct while on pretrial release, arguing that it is extrinsic to the crimes charged and does not qualify as "other acts" evidence under FED. R. EVID. 404(b).

### Standard of Decision

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41, n.4 (1984) (citing FED. R. EVID. 103(c); *cf.* FED. R. C. P. 12(e)). As such, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed. App'x 337 (10th Cir. 2010) (internal quotations omitted). Despite these streamlining benefits, a court is typically "better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In order to exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). However, "the district court may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146

3

(10th Cir. 1995) (citations omitted); *see also Luce*, 469 U.S. at 41 ("The ruling is subject to change when the case unfolds … [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## *Discussion*

### I.    **Defendant's statements to her supervisors at ACOG are not intrinsic evidence of her guilt and fraudulent intent.**

Rule 404(b) applies only to extrinsic, as opposed to intrinsic, evidence: "Rule 404(b) [of the Federal Rules of Evidence] limits the admissibility of evidence related to other crimes [or] wrongs, but it only applies to evidence of acts extrinsic to the charged crime." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (internal quotations and citation omitted). "If the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Id.* at 1212; *see also United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014) ("[I]f the other-acts evidence is intrinsic to the charged crime - that is, 'inextricably intertwined' with the evidence of the charged crime - it is admissible without regard to Rule 404(b)'s prohibitions."). As stated by the Tenth Circuit:

> Generally speaking, intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense.

*United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (internal quotation marks and citations omitted).

4

Defendant argues that the evidence set forth in the Government's Rule 404(b) Notice is extrinsic to the crimes charged; therefore, the Court must analyze it under Rule 404(b). Def. Resp. at 2-3. Specifically, Defendant argues that "the evidence of Ms. Wilczek's conduct on pretrial release is neither directly connected to the factual circumstances of the charged crimes or contextual." *Id.* at 3. Additionally, the evidence "cannot provide any context because it occurred far after the last illegal transaction occurred" and "is not necessary to support any element of any of the charged offenses." *Id.*

In response, the Government argues that the Court need not look to Rule 404(b) because "[f]alse exculpatory statements are circumstantial evidence of a person's guilt." Gov't Resp. at 3. Moreover, the Government continues, the "Tenth Circuit has repeatedly held that evidence of false exculpatory statements is admissible to prove consciousness of guilt or unlawful intent." *Id.* at 3-4. Therefore, Defendant's "false statements to her employers at ACOG are admissible as intrinsic evidence of her consciousness of guilt and fraudulent intent." *Id.* at 4.

After careful consideration of the parties' positions, the Court finds that Defendant's statements to her supervisors at ACOG are not intrinsic to the crimes charged. Assuming the falsity of Defendant's statements, it is difficult to see how such false statements relate to the crimes charged. Unlike the caselaw cited by the Government, Defendant's attempted cover-up did not occur shortly after her alleged crimes. Instead, Defendant's allegedly false statements were made years after the conduct giving rise to the charges in the Superseding Indictment. The Government fails to show how Defendant's statements are "intrinsic evidence of her consciousness of guilt and fraudulent intent." *See* Gov't Resp. at 4. The

statements are not "directly connected to the factual circumstances of the crime[s]" and do not "provide[] contextual background information to the jury." *See Parker*, 553 F.3d 1314.

## II. Defendant's statements to her supervisors at ACOG are inadmissible under Rule 404(b).

Finding that Defendant's statements to her supervisors at ACOG are not intrinsic to the crimes charged in the Superseding Indictment, the Court turns to whether the statements are admissible under Rule 404(b).

Defendant argues that her statements are inadmissible under Rule 404(b) because her "pretrial conduct occurred years after the conduct charged in the indictment ended." Def.'s Mot. at 5. According to Defendant, the statements merely "demonstrate an attempt to keep her employer from finding out she was charged with a crime because she was afraid of losing her job." *Id.* Defendant further argues that "[s]uch evidence contains no probative value and does not support any element of any of the crimes charged;" instead, "it insinuates to the jury that Ms. Wilczek is a liar who continues to say things that are untrue." *Id.*

In response, the Government argues generally that Defendant's statements are "admissible to prove Wilczek's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake in making false statements in furtherance of her schemes to defraud YWCA Enid and the Cimarron Montessori School." Gov't Resp. at 5. More specifically, the Government argues that Defendant's statements "place[] her at the scene of both the wire fraud offenses and the bank fraud offenses alleged" and "demonstrate her

capacity to spin believable tales to disguise her misconduct and tend to show that Wilczek was well in command of her actions." *Id.*

Rule 404(b) provides that although "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character to show that" the person acted in accordance therewith, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1) and (2). Four factors govern the admissibility of evidence of other crimes or wrongs under Rule 404(b): (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and, (4) the court must give a proper limiting instruction if it is requested by the defendant. *United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)). When offering evidence under Rule 404(b), "the government bears the burden of showing that the proffered evidence is relevant to an issue other than character." *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000). "The government must 'articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred' from the other acts evidence." *Id.* (quoting *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985)); *see also United States v. Commanche*, 577 F.3d 1261, 1266 (10th Cir. 2009).

After careful consideration of the parties' positions, the Court finds that the Government fails to meet its burden to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred" by Defendant's statements to her

supervisors. *See Kendall*, 766 F.2d at 1436. The Government claims that Defendant's statements "place[] her at the scene of both the wire fraud offenses and the bank fraud offenses alleged" and "demonstrate her capacity to spin believable tales to disguise her misconduct and tend to show that Wilczek was well in command of her actions." Gov't Resp. at 5. Even assuming the falsity of Defendant's statements, it is unclear to the Court how either of the Government's generalized propositions show that the statements are offered for a proper purpose, or are relevant, as opposed to being offered to show that Defendant is a liar. The statements make it no more or less likely that Defendant committed the finance-related crimes charged in the Superseding Indictment. *See* FED. R. EVID. 401.

## III.   Defendant's statements to Pretrial Services are admissible for impeachment purposes only.

Although not raised by Defendant in her Motion, the Government argues that Defendant's statements to Pretrial Services are admissible solely for impeachment purposes. Gov't Resp. at 6-7. 18 U.S.C. § 3153(c)(3), which governs the organization and administration of pretrial services, provides as follows:

> Information made confidential under paragraph (1) of this subsection is not admissible on the issue of guilt in a criminal judicial proceeding unless such proceeding is a prosecution for a crime committed in the course of obtaining pretrial release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided.

Although not admissible on the issue of guilt, the Tenth Circuit has held that "the inadmissibility of statements made to Pretrial Services as to the issue of guilt does not restrict the Government from using such statements to impeach a defendant's trial testimony." *United States v. De La Torre*, 599 F.3d 1198, 1205 (10th Cir. 2010).

The Court, therefore, finds that Defendant's statements made to Pretrial Services are admissible solely for the purpose of impeaching Defendant's trial testimony, should she decide to testify. The Court further finds that the evidence is not unfairly prejudicial under Rule 403. *See Caraway*, 534 F.3d at 1301 ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.").

### *Conclusion*

For these reasons, Defendant's Motion in Limine to Exclude Evidence of Ms. Wilczek's Conduct While on Pretrial Supervision [Doc. No. 48] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein. The Government will not be permitted to introduce as evidence Defendant's statements to her supervisors at the Association of Central Oklahoma Governments. However, the Government may use Defendant's statements to the Probation Office to impeach Defendant, should she choose to testify at trial.

**IT IS SO ORDERED** this 6th day of November, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge