IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-216-D |
| ) | |
| DEBORAH WILCZEK, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Before the Court is Defendant's Motion in Limine to Exclude Expert Testimony [Doc. No. 50]. The Government has responded [Doc. No. 54]. The matter is fully briefed and at issue.

## *Background*

Defendant stands charged in a 17-count Superseding Indictment with: (1) two counts of wire fraud in violation of 18 U.S.C. § 1343; (2) six counts of bank fraud in violation of 18 U.S.C. § 1344(2); two counts of uttering forged securities in violation of 18 U.S.C. § 513(a); two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); and five counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). Superseding Indictment [Doc. No. 37]. The Superseding Indictment alleges that Defendant engaged in fraudulent schemes to steal money from the YWCA Enid and the Cimarron Montessori School. *Id.*

Relevant here, the Government plans to offer the testimony of Avadell Hibbets, Crystal Harmon, Amy Dunford, and Gary Baker. Ms. Hibbets and Ms. Harmon work for

an accounting firm hired by Cimarron Montessori School ("Cimarron"), Wymer Brownlee, while Ms. Dunford and Mr. Baker are IRS agents. The Government states that Ms. Hibbets and Ms. Harmon will testify to Wymer Brownlee's findings after Cimarron board members asked the firm to conduct a review of the School's Quickbooks and bank statements upon discovering Defendant's alleged embezzlement of Cimarron funds. The Government also states that Ms. Hibbets and Ms. Harmon will testify to Wymer Brownlee business records, and that they did not instruct Defendant to make certain entries in Cimarron's books and records.

As for Ms. Dunford and Mr. Baker, the Government states that Ms. Dunford will testify that she examined Defendant's tax returns and found that Defendant did not report her alleged embezzlement income for the 2016 through 2020 tax years, along with other alleged failures to report. The Government states that, should he testify, Mr. Baker will testify as to his calculations of amounts Defendant embezzled and failed to report.

## *Discussion*

FED. R. EVID. 701 governs lay witness opinion testimony and provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Tenth Circuit has held that Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require

the special skill and knowledge of an expert witness." *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846 (10th Cir. 1979). Instead, Rule 701 allows lay witnesses to offer "observations [that] are common enough and require . . . a limited amount of expertise, if any." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir. 1995)).

Defendant argues that each of the aforementioned witnesses will likely provide expert opinion testimony, which falls outside Rule 701 and is instead governed by Rule 701. The Court addresses each category of witnesses in turn below.

### I.  Ms. Hibbets and Ms. Harmon will be permitted to provide lay witness opinion testimony pursuant to FED. R. EVID. 701.

In her Motion, Defendant argues that she expects Ms. Hibbets' and Ms. Harmon's testimony at trial to include "opinions based on their accounting and bookkeeping experience and analysis of the transactions they observed while reviewing the organizations financial statements." Def.'s Mot. at 3-4. Defendant further argues that it "is also expected that the government will seek to admit documents created by these witnesses described as an Audit Trail," but, because this document "contains their opinion of which transactions were fraudulent," the Government failed to provide proper notice of those opinions. *Id.* at 4.

In response, the Government argues that it "is undisputed that Wymer Brownlee had knowledge of CMS, its bookkeeping practices, expenses, and payroll and employment taxes." Gov't Resp. at 6. Moreover, the Government argues, Ms. Hibbets and Ms. Harmon "used no outside expert reports to assist them with bank reconciliation" and that

3

reconciliation process "required no advanced math beyond basic arithmetic." *Id.* Therefore, Ms. Hibbets and Ms. Harmon plan to provide lay witness opinion testimony under Rule 701, and no pretrial expert witness disclosures or notices were necessary.

"Though accountants often testify as expert witnesses," an accountant's testimony may properly fall under Rule 701 as lay testimony. *Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013). It is the substance of the accountant's testimony, as opposed to the mere fact that the witness is an accountant, that matters. The Tenth Circuit has held that an accountant using "basic arithmetic, personal experience, and no outside expert reports in calculating lost income and other claims for coverage" may properly testify as a lay witness under Rule 701. *See id.*

Here, the Court finds, based on the record before it, that Ms. Hibbets' and Ms. Harmon's proposed testimony falls within Rule 701. As the Government notes, Wymer Brownlee "has knowledge of [Cimarron], its bookkeeping practices, expenses, and payroll and employment taxes." Gov't Resp. at 6. Further, the Government represents that neither Ms. Hibbets nor Ms. Harmon used an "outside expert report[] to assist them with bank reconciliation," and the reconciliation "required no advance math beyond basic arithmetic." *Id.* Instead, the reconciliation appears to be based on a review of Cimarron's Quickbooks and comparing those entries to Cimarron's bank statements.[1] *See id.* at 3. This

---

[1] The Government states that the "Audit Trail" document that Defendant takes issue with in her Motion is not actually an audit prepared according to generally accepted accounting principles, but rather a "title generated by Quickbooks." Gov't Resp. at 3. The Government states that the document "reflects all the corrections and changes that had to be made to CMS's Quickbooks file because of Ms. Wilczek's fraudulent entries." *Id.*

4

proposed testimony is the type the Tenth Circuit held falls within Rule 701. *See, e.g.*, *Ryan Dev.*, 711 F.3d at 1170. The Court will, therefore, allow Ms. Hibbets and Ms. Harmon to offer lay witness opinion testimony pursuant to Rule 701.

**II.    Ms. Dunford and Mr. Baker will be permitted to provide lay witness opinion testimony pursuant to FED. R. EVID. 701.**

In her Motion, Defendant argues that she expects some of Ms. Dunford's and Mr. Baker's testimony at trial to "involve discussion of tax law, their opinions on the legality of the transactions they observed during their investigation, and proper tax deductions." Def.'s Mot. at 3. However, Defendant continues, "these witnesses should be excluded from presenting expert testimony because the government did not provide timely notice and Ms. Wilczek has not had an adequate opportunity to contest their qualifications." *Id.*

In response, the Government states that Ms. Dunford will "provide an explanation of the relevant tax forms and explain basic calculations involved in filling out the forms." Gov't Resp. at 7. Ms. Dunford will also "explain basic mathematical calculations used to compare numbers on the tax forms to the voluminous financial records which will already be in evidence." *Id.* Additionally, Ms. Dunford will "explain her process of checking the expenses reported in Wilczek's returns including examining whether certain expenses appear to be business related." *Id.* Therefore, the Government argues, Ms. Dunford "employed no greater expertise to determine what appeared business related than what the jurors possess" and may testify as a lay witness under Rule 701. *Id.* The Government does not provide any detailed argument as to Mr. Baker, aside from the statement that, should

he testify, he will "testify as to his calculations of amounts that Wilczek embezzled and failed to report." *Id.* at 4.

After careful consideration of the parties' positions, the Court finds that, based on the record before it, Ms. Dunford and Mr. Baker may properly offer lay witness opinion testimony under Rule 701. The Eleventh Circuit's decision in *United States v. Beverley*, 775 Fed. App'x 468 (11th Cir. 2019) is instructive on this point. There, the district court allowed an IRS special agent to "offer his lay opinion about whether he considered certain funds he traced to be [the defendant's] income or not." *Id.* at 474. In affirming the district court's evidentiary ruling, the Eleventh Circuit held that the agent's "testimony was rationally based on his perception of the financial and tax records he reviewed and of the interviews he conducted with the account owners." *Id.* Additionally, his testimony "was helpful to allowing the jury to understand the voluminous financial records they had seen and the extensive witness testimony they had heard" and was not "based on specialized tax or legal knowledge." *Id.*

And, although in the context of a summary witness analysis, the First Circuit's analysis of an IRS agent's testimony in *United States v. Stierhoff*, 549 F.3d 19 (1st Cir. 2008) is also instructive. There, the IRS agent "computed the defendant's gross receipts," "set to one side non-taxable receipts (such as loan proceeds) and subtracted business expenses (treating all non-cash withdrawals from the defendant's accounts as deductible)," and "arrived at an estimate of the defendant's net profits for each year." *Id.* After that, the agent "adjusted for self-employment taxes, took the standard deduction, and factored in personal exemptions." *Id.* The agent's computations "yielded the defendant's putative

taxable income for each of the four years in question." *Id.* "From there, elementary school arithmetic—an application of the rate table—produced annual figures for taxes due and owing." *Id.* The First Circuit held that such calculations and testimony "fit[] comfortably within the mine-run of permissible summary witness testimony in tax cases" because "testimony by an IRS agent that allows the witness to apply the basic assumptions and principles of tax accounting to particular facts is appropriate in a tax evasion case." *Id.* at 27-28.

Based on the Government's description of Ms. Dunford's expected testimony, the Court finds that she may properly testify as a lay witness under Rule 701. Like the IRS special agent in *Beverley*, it appears that Ms. Dunford will testify based on her own "perception of the financial and tax records [she] reviewed." *See Beverley*, 775 Fed. App'x at 474. Moreover, her expected testimony does not appear to be based on specialized tax or legal knowledge; rather, her expected testimony appears likely to be helpful in "allowing the jury to understand the voluminous financial records they [will likely see] and the extensive witness testimony they [will likely hear]." *See id.*; *see also Stierhoff*, 549 F.3d at 28 ("Despite these facts, the district court decided that, considering the limited use that the government proposed to make of him, there was no need for him to testify as an expert."). The same appears true for Mr. Baker, who, if necessary, will testify as to his calculations of amounts Defendant embezzled and failed to report.

*Conclusion*

For these reasons, Defendant's Motion in Limine to Exclude Expert Testimony [Doc. No. 50] is **DENIED**. The Court's Order does not impact either party's ability to assert specific, contemporaneous objections during trial.

**IT IS SO ORDERED** this 6th day of November, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge